IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 CR 1005 |
| | ) | |
| JOHN LOHMEIER, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Defendant's renewed motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [170] is denied. See Statement for details.

**STATEMENT**

Defendant John Lohmeier is serving a 180-month sentence after pleading guilty to a securities fraud scheme that resulted in the loss of more than $8 million by hundreds of victims. He has been in custody on that sentence since August 30, 2016. He is serving his sentence at the minimum-security satellite camp at FCI Oxford, in Wisconsin.

Mr. Lohmeier previously filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on May 12, 2020. The Court denied that motion, without prejudice, for failure to exhaust his administrative remedies as required by the statute before filing a motion for sentence reduction in court [169]. Mr. Lohmeier has filed a renewed motion [170] and the government concedes that he has now exhausted his administrative remedies. Response, ECF No. 173, at 8-9. Accordingly, the Court now addresses the substance of Mr. Lohmeier's motion.

Defendant Lohmeier's motion is premised on the COVID-19 pandemic. While he complains about the adequacy of the healthcare he is receiving at Oxford generally,[1] he alleges that he "suffers from just the sort of ailments that make him an even higher risk in the event that he is afflicted with COVID-19." Motion, ECF 170, at 4. He also alleges that FCI Oxford "is now in the midst of a COVID-19 crisis." *Id*. at 5. Neither claim holds up, much less constitutes a compelling and extraordinary basis to truncate Mr. Lohmeier's sentence to time served.

Mr. Lohmeier claims that he suffers from three conditions that "are deemed high risk by the CDC for severe complications related to COVID-19": bronchitis; deep vein thrombosis; and testosterone deficiency. None of these conditions, however, is identified in the CDC's current

---

[1] To the extent that Mr. Lohmeier seeks to reduce his sentence on the basis that he is not receiving adequate healthcare at FCI Oxford generally, it fails to establish that any of Mr. Lohmeier's health conditions are dire.

guidance as a condition that increases the risk of severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 2, 2021).

None of these conditions, moreover, appears to significantly compromise Mr. Lohmeier's health. His pulmonary/respiratory system was described as "within normal limits," without coughing, and clear to auscultation during an exam done by the chronic care clinic in September 2020. ECF No. 174 at 7.[2] No reference to chronic bronchitis was noted. Other comprehensive listings of Mr. Lohmeier's health issues similarly omit any reference to chronic bronchitis. *See*, *e.g.*, ECF No. 174 at 80-81 (2017 inventory of health issues). Over the past year, for example, Mr. Lohmeier presented at sick call in April 2020, reporting that he suffers from "chronic seasonal bronchitis" and complained that his left lung was congested and burned when he coughed. The physical exam notes, however, describe Mr. Lohmeier's condition as "acute"—not chronic— bronchitis and reflect that on examination Mr. Lohmeier s pulmonary function was within normal limits, he was not suffering from respiratory distress, his lungs were clear to auscultation, he did not appear to be ill and had no shortness of breath or cough. *Id*. at 27-29. With respect to the blood clotting issue, based on information provided by Mr. Lohmeier and the BOP, the blood clotting issue was a one-time event, which took place after a surgery in September 2015. *Id*. at 33 ("first/only occurrence in 2015"); id. at 81 (listing acute embolism and thrombosis of vein" as in remission). This problem occurred almost a year before Mr. Lohmeier's incarceration, has not recurred, and the medical records indicate no need for further treatment for the issue. And finally, with respect to low testosterone, while that condition is well documented in the medical records, those records make clear that Mr. Lohmeier was being given testosterone supplements until his recent medical evaluation on September 22, 2020 and that they were effective. At that time, the records indicate that his testosterone was not low, but "elevated," prompting the doctor to discontinue the supplement with reassessment to follow. ECF No. 174 at 1. That reassessment was continuing in January 2021 and confirmed that the treatment would be resumed if indicated.

Simply put, defendant has not demonstrated that he is suffering from medical conditions that put him at more serious risk if he contracts COVID-19, and thus he has failed to demonstrate the existence of "extraordinary and compelling reasons" for a sentence reduction.[3] The point is confirmed by the fact that Mr. Lohmeier was infected with COVID-19 and remained

---

[2] Other exams include similar reports of normal pulmonary function. *See also*, *e.g.*, ECF No. 184 at 7-8 ("within normal limits"); ECF No. 174 at 11 (August 2020 exam; "lungs clear to auscultation"); *id*. at 34 (February 2020 exam; lungs "clear to auscultation").

[3] In its initial filing, the Government argued that in addition to finding extraordinary and compelling reasons to reduce a defendant's sentence, doing so must also be "consistent with applicable policy statements issued by the U.S. Sentencing Commission," Resp. at 7, the Seventh Circuit rejected that argument about a month after the Government filed its response. See United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020), explaining that (due to the lack of a quorum) the Sentencing Commission has not yet promulgated an "applicable" policy statement concerning prisoner-initiated applications for compassionate release, so judicial discretion in assessing whether there are extraordinary and compelling circumstances within the meaning of § 3582(c)(1)(A) is not cabined by the Guidelines. The Government acknowledged *Gunn*'s holding in its response to Lohmeier's first supplemental filing.

asymptomatic. ECF No. 179 at 20 (documenting positive test and describing Lohmeier as "asymptomatic"). *See also*, *e.g.*, *id.* at 1 (reporting that inmate denied all symptoms of COVID-19 infection following positive test over the course of the following week). Mr. Lohmeier asserts that he did suffer symptoms and contends that medical staff did not document his symptoms properly because they were too busy but that claim is not credible; it takes no more time or effort to check a box with a "Y" (for yes, to indicate a patient is experiencing a symptom) than it does to fill the box with an "N" (for no, to indicate a patient is not experiencing a symptom). Mr. Lohmeier's records reflect that he repeatedly responded negatively as to all COVID-19 symptoms. Moreover, even if he experienced the symptoms he identifies, there is no basis to conclude that he faces a dire risk to his health resulting from his COVID-19 infection; indeed, medical records reflect that in January 2021 Mr. Lohmeier was working in a prison job that required physical exertion—not the type of activity to which a compromised individual would be assigned. ECF No. 184 at 1 (injury reported while sorting scrap metal into dumpsters). The Court agrees with others which have held that having previously contracted COVID-19 with mild symptoms does not constitute an extraordinary and compelling basis to reduce a defendant's sentence. *See*, *e.g.*, *United States v. Bartlett*, No. 13 CR 463-1, 2021 WL 54024, at *2 (N.D. Ill. Jan. 6, 2021) ("The fact that Mr. Bartlett contracted and recovered from COVID-19 cuts against granting the relief he requests.") (Durkin, J.); *United States v. Thompson*, No. 04 CR 464-1, 2020 WL 7771141, at *3 (N.D. Ill. Dec. 30, 2020) (defendant's symptoms from COVID-19 infection, "including shortness of breath, chest pains, tightness in his chest, ringing in his ears, body/muscle aches, and 'odd pains time to time,' while undoubtedly unpleasant, are similar to those experienced by many Covid-19 sufferers who go on to recover from the disease") (Bucklo, J.); *United States v. Correa*, 11 CR 750, Dkt. No. 311 (Oct. 21, 2020) (Dow, J.) (denying motion for compassionate release after defendant, contracted and recovered from a mild case of COVID-19 while in custody, and observing "[w]hile there are reported cases of reinfection, such events appear to be very rare."); *United States v. Phillips*, 2020 WL 7353867 (D. Kansas, Dec. 15, 2020) (lingering symptoms and possibility of reinfection did not constitute extraordinary and compelling basis for sentence reduction).

That Mr. Lohmeier was infected, moreover, substantially reduces his risk of reinfection. According to the CDC, "Cases of reinfection with COVID-19 have been reported, but remain rare."[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited February 3, 2021). And even were that not the case, the Court would not be inclined to find compelling circumstances for reducing Mr. Lohmeier's sentence based on concern about the risk of severe health impairments should he again contract COVID-19 when he has declined to take all available precautions against infection—specifically, vaccination. See ECF No. 184 at 88, 113 (declining Pfizer and Moderna vaccines, respectively). In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction. *United States v. McBride*, No. 519CR00007KDBDCK1, 2021 WL 354129, at *3 (W.D.N.C. Feb. 2, 2021) ("Defendant's refusal to take preventative measures undermines his assertion that extraordinary and compelling reasons exist to warrant his release from prison."); *United States v. Williams,* No. CR1701279001PHXDLR, 2021 WL 321904, at *3 (D. Ariz. Feb.

---

[4] The point is not that reinfection is not possible, but that it is less likely. To date, cases of reinfection have been uncommon and the Court is aware of no authority—and Lohmeier provides none—suggesting that the reinfection risk is comparable to the risk of initial infection.

1, 2021) ("Defendant's own behavior [in refusing vaccination] is inconsistent with his position that he believes he is at increased risk from the virus."). Of course, were Mr. Lohmeier to substantially mitigate his risk of further COVID-19 infection, that would eliminate the predicate for his compassionate release motion. If that is the gambit, it fails. *United States v. Gonzalez Zambrano*, No. 18-CR-2002-CJW-MAR, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although defendant has a right to refuse medical treatment, the Court finds that it would be inappropriate to reward her refusal to protect herself by granting her release. It would be paradoxical to endorse a system whereby a defendant could manufacture extraordinary and compelling circumstances for compassionate release by unreasonably refusing the health care afforded to them.")

Notwithstanding his own recalcitrance, moreover, that other inmates and staff are being vaccinated also lowers Mr. Lohmeier's risk exposure. The same is true for all of the other remedial steps that the facility has taken to control the spread of infection. After a substantial outbreak of COVID-19 cases at Oxford in the fall, there is presently only one active case, a fact that, as the Government notes, "indicates that the efforts of BOP personnel to limit and control the spread of the virus have had a positive impact." ECF No. 186 at 2 n.1. And with vaccination proceeding, there is every reason to believe that the facility's preventive measures will be substantially improved. And, again, in refusing vaccination, Mr. Lohmeier is contributing to any risk that remains and, in this Court's view, forfeits his claim that the remaining risk constitutes an extraordinary and compelling basis to reduce his sentence.

Even if the Court were to conclude that Mr. Lohmeier's health presented an extraordinary and compelling basis to reduce his sentence, the motion would still be denied because reducing Mr. Lohmeier's sentence by two thirds would, in the Court's view, make a travesty of the sentencing objectives set forth in 3553(a).[5] Mr. Lohmeier maintains that his sentence of 180 months was "draconian" and "well outside the mainstream or the heartland" for offenses of that type, but offers no support for that claim, Indeed, to the contrary, Mr. Lohmeier's motion fails to acknowledge that but for the statutory maximum on the counts he pleaded guilty to, Mr. Lohmeier's Guidelines range would have been much higher: 262 to 327 months; Lohmeier received a substantial break when the government agreed to a deal that capped his potential sentence almost 7 years below the low end of that range. Moreover, Mr. Lohmeier denigrates the significance of his conduct in arguing that his sentencing range was as high as it was "solely" because of the amount of the loss; "the loss," of course, was the primary harm that Lohmeier's crimes caused. It is remarkable that Mr. Lohmeier's filings fail to acknowledge in any way the massive scope of his fraud, which victimized hundreds of customers who entrusted substantial portions of their life savings to him only to learn that their trust had been betrayed and their savings plundered. In none of his filings does Mr. Lohmeier evince remorse for his crimes or acknowledge the adverse effect a sentence reduction would have on the victims of the fraud he committed. Also

---

[5] Lohmeier chastises the government for arguing that he has served only about 50 months of his 180-month sentence, arguing that with good time credits, he has served substantially more of the sentence imposed. The Government's argument is correct, however; the sentence imposed was 180 months and Lohmeier remains subject to serving all of that time; good time credits may be earned but they may also be revoked. That seems unlikely, given Mr. Lohmeier's blemish-free disciplinary record to date, but it would be premature to award that credit to Mr. Lohmeier at this juncture.

conspicuous by its absence is the lack of any affirmation of a commitment to pay at least some of the $8.1 million in restitution Mr. Lohmeier owes to those victims.

While Mr. Lohmeier notes that the Probation Office recommended a sentence of only 60 months, that fact is simply irrelevant. Judges, not probation officers, sentence defendants. The effect of the defendant's fraudulent conduct was profound. It was not a crime of violence but it destroyed lives nonetheless and demanded a substantial prison term well in excess of five years—yet, if granted, Mr. Lohmeier would not have served even that long. Reducing the term of custody imposed by essentially two-thirds would render the sentence entirely inadequate to reflect the seriousness of the offense, promote respect for the law, or provide adequate deterrence to others tempted to similarly violate their fiduciary duties and defraud their customers. The Court therefore would not grant the requested sentence reduction even if Mr. Lohmeier had satisfied the requirement of presenting an extraordinary and compelling justification for doing so—which he has not done.

Finally, to the extent that Mr. Lohmeier's motion seeks, in the alternative, an order that he serve the rest of his sentence in home confinement, the Court has no authority to grant the request. As the Government points out, the designation of where a defendant serves a term of imprisonment is within the province of the Bureau of Prisons, not the courts. Section 3582(c)(1)(A) of Title 18 does permit the Court, in conjunction with a sentence reduction, to impose a term of supervised release up to the unserved portion of the original term of imprisonment and to impose conditions that include home confinement. But that authority is contingent upon the granting of a sentence reduction and, for the reasons set forth, the Court declines to grant Mr. Lohmeier's motion for a sentence reduction.

Dated: February 3, 2021

John J. Tharp
United States District Judge